UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE HEALY,

                Plaintiff,           **DECISION AND ORDER**

                v.                            1:18-CV-00624 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## **INTRODUCTION**

Represented by counsel, plaintiff Nicole Healy ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 13; Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 17) is granted and Plaintiff's motion (Dkt. 13) is denied.

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on April 24, 2014, and May 27, 2014, respectively. (Dkt. 10 at 179-80).[1] In her applications, Plaintiff alleged disability beginning December 16, 2013, due to depression, anxiety, herniated discs L3-4 and L5, degenerative disc disease, and "possible bipolar." (*Id.* at 67, 77). Plaintiff's applications were initially denied on July 30, 2014. (*Id.* at 87-94). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Timothy McGuan on February 14, 2017. (*Id.* at 36-60). On April 28, 2017, the ALJ issued an unfavorable decision. (*Id.* at 16-36). Plaintiff requested Appeals Council review; her request was denied on May 23, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 1-6). This action followed.

**LEGAL STANDARD**

**I.  District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff last met the insured status requirements of the Act on September 30, 2015. (Dkt. 10 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 16, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine, obesity, a depressive disorder, and an anxiety disorder." (*Id.* at 22). The ALJ further found that Plaintiff had the nonsevere impairments of left wrist pain, joint pain, muscle spasms, sleep disturbance, fatigue, hypertension, urinary incontinence, dermatitis, sinusitis, tobacco use disorder, and history of poly-substance abuse. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22). The ALJ particularly considered the requirements of Listings 1.04, 12.04, and 12.06 in reaching this conclusion. (*Id.* at 22-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the additional limitations that:

> [Plaintiff can] lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [Plaintiff] is occasionally able to understand, remember, and carry out complex and detailed tasks. In addition, although [Plaintiff] is only occasionally able to interact with the public, she has no limitations in the ability to interact with co-workers or supervisors.

(*Id.* at 25).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of assembler and warehouse support worker. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 31).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing: (1) consultative examiner Dr. Hongbiao Liu's opinion did not account for subsequent treatment and diagnostic studies and thus could not serve as substantial evidence in support of the ALJ's physical RFC finding; and (2) the ALJ erred in weighing the opinions of consultative examiner Dr. Christine Ransom, state agency psychologist Dr. J. Straussner, mental health counselor ("MHC") Sunny Friscaro, and Shannon O'Keefe, LMSW, in formulating Plaintiff's mental RFC finding. (Dkt. 13-1 at 5-6). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A. Physical RFC Finding

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.*

However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

Plaintiff essentially argues that because the ALJ relied on consultative examiner Dr. Liu's opinion, the ALJ's physical RFC finding is unsupported by substantial evidence. (Dkt. 13-1 at 5). In particular, Plaintiff argues that the ALJ erred in finding Dr. Liu's opinion was "well-supported" considering Dr. Liu examined Plaintiff in 2014 and thus had not reviewed subsequent reports and examinations. (*Id.*). The Court disagrees.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age. *See Camille v.* Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (consultative physician's opinion was not rendered stale on the basis of subsequent treatment records and the submission of additional physician's opinions where the opinions were consistent and did not evidence the plaintiff's significant deterioration); *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in

relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

Here, Dr. Liu rendered his opinion in July 2014. (Dkt. 10 at 335-38). Dr. Liu conducted a physical examination of Plaintiff and observed:

> [Plaintiff's] [c]ervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lower lumbar spine flexion and extension 75 degrees, lateral flexion left and right 20 degrees, and rotation left and right 20 degrees. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.

(*Id.* at 337). Dr. Liu ultimately opined that Plaintiff was mildly limited in prolonged walking, bending, and kneeling. (*Id.* at 338).

Dr. Liu's opinion is not "stale merely because it pre-dates other evidence in the record, where, as here, the subsequent evidence does not undermine [Dr. Liu's] conclusions." *Hernandez v. Colvin*, No. 15-CV-6764, 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017). Plaintiff summarily asserts, without any citation to the record, that Dr. Liu's opinion is undermined by subsequent "reports from Plaintiff's treating physicians showing bilateral radiculopathy with extreme [pain] in the back and legs." (Dkt. 13-1 at 5). However, subsequent treatment records were consistent with Dr. Liu's opinion. (*See* Dkt. 10 at 308 (despite noting some pain and tenderness in Plaintiff's spine, Dr. Gautam Arora observed "normal sacroiliac joint mobility bilaterally," "normal curvature of spine," and strength in lumbar spine and lower back were "within normal limits bilaterally"), 413 (Dr. Nyathappa Anand reviewed October 2014 EMG study of Plaintiff's spine and

observed that "EMG of the left L4-5, L5-S1 paraspinal muscles is normal," and "[n]o evidence of sensory/motor neuropathy in the left lower extremity or left L4 through S1 radiculopathy"), 681 (Dr. Anand reviewed October 2016 EMG study of Plaintiff's spine and observed that studies of Plaintiff's right peroneal and tibial motors, right tibial H reflex latency, and right sural sensory were all "normal," and "right L4-5 paraspinal muscles show no abnormalities"), 682 (Dr. Scott P. Cholewinski reviewed October 2016 MRI of Plaintiff's lumbar spine and concluded "no compression fracture, spondylolysis or spondylolisthesis," consistent with Plaintiff's 2008 examination)).

Plaintiff has not pointed to any particular records that she believes undermine Dr. Liu's opinion, and the Court does not find, based on its review, that Plaintiff's condition significantly deteriorated subsequent to Dr. Liu's examination of Plaintiff. As such, the ALJ did not err in relying on Dr. Liu's opinion to ascertain Plaintiff's physical RFC, and Dr. Liu's opinion provided substantial evidence for the ALJ's conclusion that Plaintiff was capable of a range of light work. *See Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (affirming ALJ's light work RFC assessment where consultative examiner assessed "mild limitations for prolonged sitting, standing, and walking"); *Bona v. Comm'r of Soc. Sec.*, No. 1:15-CV-00658 EAW, 2016 WL 4017336, at *11 (W.D.N.Y. July 22, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." (quotation omitted)); *Carpenter v. Astrue*, No. 09-CV-0079-A, 2010 WL 2541222, at *5 (W.D.N.Y. June 18, 2010) (finding consultative examiner's opinion of moderate limitation in prolonged standing, walking, kneeling, and climbing consistent with RFC for light work).

Accordingly, remand on this basis is not warranted.

**B.  Mental RFC Finding**

In assessing Plaintiff's mental RFC, the ALJ gave little weight to the opinions of MHC Friscaro and Ms. O'Keefe and "significant weight" to the opinions of Drs. Ransom and Straussner.  (Dkt. 10 at 27-28).  Plaintiff argues that the ALJ erred in relying on consultative examiner Dr. Ransom's opinion because Dr. Ransom examined Plaintiff just once, three years prior to the hearing, and thus "did not have a longitudinal picture of Plaintiff's psychological abilities."  (Dkt. 13-1 at 6).  However, as discussed above, it is well settled that the opinions of consultative examiners can constitute substantial evidence. *See Bona*, 2016 WL 4017336, at *11.

Additionally, the mere passage of time or the development of additional evidence does not render Dr. Ransom's opinion stale.  Plaintiff does not argue, nor do treatment records show, that Plaintiff's condition significantly deteriorated after Dr. Ransom's July 2014 opinion. (*See, e.g.*, Dkt. 10 at 599 (MHC Friscaro observed that Plaintiff had pleasant affect and cooperative behavior and noted that Plaintiff "denied any current lethality to herself or others and appeared to be future oriented as she [reported] that she had plans to take care of her father and children"), 601 (MHC Friscaro observed that Plaintiff had pleasant affect and cooperative behavior and noted that Plaintiff "appeared to be future oriented with plans to take care of her father" and that Plaintiff had "begun reading daily . . . to her family and this has been positive"), 605 (Dr. Hak Ko's psychiatric progress record notes that Plaintiff reports "she is managing okay and is not showing any basic change in her mental status, and does not appear to be too anxious, restless or depressed,

and no suicidal thoughts")). Accordingly, Dr. Ransom's opinion was not stale.

The Court further finds no error in the ALJ's assessment of the consistency of Dr. Ransom's opinion with the evidence as a whole. Dr. Ransom opined:

> [Plaintiff] will show no evidence of difficulty following and understanding simple directions and instructions, perform[ing] simple directions and instructions, perform[ing] simple tasks independently, maintain[ing] attention and concentration for simple tasks, maintain[ing] a simple regular schedule and learn[ing] simple new tasks. She would have mild difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress due to bipolar disorder, currently mild; panic disorder without agoraphobia, currently mild. The results of the evaluation are consistent with mild psychiatric difficulties, which will not significantly interfere with [Plaintiff's] ability to function on a daily basis.

(Dkt. 10 at 341-42). This opinion was consistent with that of Dr. Straussner, who opined that Plaintiff was mildly limited in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id.* at 71, 81). The ALJ gave the opinions of Drs. Straussner and Ransom "significant weight" "due to their expertise and the relative consistency of their opinions with each other and the overall medical evidence." (*Id.* at 28). *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *7 (Aug. 7, 2018) ("An ALJ has [the] discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record.").

The ALJ's reasons for affording the opinions "significant weight" were amply supported by the medical evidence in the record demonstrating Plaintiff's condition was generally stable. (*See, e.g.*, Dkt. 10 at 329 (Dr. Ko observed that Plaintiff "is fully cooperating . . . and showing gradual but significant improvement. She is now sleeping better. She is not as anxious. She feels safer. She is not having any rac[ing] thoughts,

and states that she has been feeling much better and improved and stable and is feeling ready to go back home with outpatient follow up treatment . . . and at the time of her discharge, [Plaintiff] was markedly improved and stable and not suicidal"), 331 (upon mental status examination of Plaintiff, Dr. Ramesh Konakanchi noted that "[Plaintiff] is alert and oriented . . .[,]" "[g]enerally cooperative[,]" "[t]hought process is goal directed," has fair insight and judgment, and "[n]o gross cognitive deficits"), 392 (Dr. Arora observed that Plaintiff's "mood and anxiety appear to be stable with current medical regimen")). In light of the above, the Court finds that the ALJ did not commit error in affording the opinions of Dr. Straussner and Dr. Ransom "significant weight" and his reasons for affording them great weight were proper and supported by the record.

Contrary to Plaintiff's assertion, the ALJ did not reject the opinions of MHC Friscaro and Ms. O'Keefe, but rather assigned them "little weight." (Dkt. 10 at 29). As an initial matter, the Court notes that these opinions are not entitled to controlling weight as MHC Friscaro, a mental health counselor, and Ms. O'Keefe, a licensed social worker, are not acceptable medical sources. *See* 20 C.F.R. § 416.913(a). Nonetheless, it is clear that the ALJ fashioned his RFC finding by referring to the opinions of Drs. Ransom and Straussner and incorporating limitations identified by MHC Friscaro. For example, the ALJ incorporated MHC Friscaro's opinion that Plaintiff had no limitations in responding appropriately to supervision (Dkt. 10 at 449) by including in his RFC finding that Plaintiff had no limitations in the ability to interact with supervisors (*id.* at 25). Additionally, the ALJ incorporated MHC Friscaro's opinion that Plaintiff had mild limitations in social functioning (*id.* at 449) by limiting Plaintiff to occasional interactions with the public (*id.*

at 25). As such, contrary to Plaintiff's assertion, MHC Friscaro's opinion was generally consistent with the opinions of Drs. Ransom and Straussner, further demonstrating the ALJ's RFC finding was supported by substantial evidence.

By contrast, Ms. O'Keefe assessed mostly marked limitations. (*See id.* at 686-88). To the extent Ms. O'Keefe's opinion conflicted with the other three opinions, it was within the ALJ's discretion to resolve the conflict. *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'" (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002))). The Court also rejects Plaintiff's argument that the ALJ's decision was internally inconsistent because the ALJ afforded weight to the GAF scores outlined in the opinions of MHC Friscaro and Ms. O'Keefe, but had previously discounted other GAF scores in the record. (Dkt. 13-1 at 6). A plain reading of the ALJ's decision demonstrates that the ALJ referred to the GAF scores identified by MHC Friscaro and Ms. O'Keefe to show that some of the limitations they identified were inconsistent with such scores. For example, the ALJ noted that Ms. O'Keefe assigned Plaintiff a GAF score of 55. (Dkt. 10 at 29). "A GAF score 51-60 . . . indicates moderate symptoms or moderate difficulties in social, occupational, or school functioning." *Ohrnbergser v. Colvin*, No. 15-CV-2714 (DRH), 2016 WL 4435222, at *2 n.2 (Aug. 19. 2016). As such, it was not unreasonable for the ALJ to conclude that Ms. O'Keefe's opinion identifying mostly marked limitations and her conclusion that Plaintiff was unable to function independently outside her home was internally inconsistent, in part, with the GAF score she assessed.

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC

assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians. As such, the RFC assessment in this case is consistent with the record and is supported by substantial evidence. Accordingly, neither reversal nor remand is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 17) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 24, 2020
Rochester, New York